**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION, CINCINNATI OFFICE**

**DALLAS KILLION,**
9194 Ken Drive
Covington, KY 41017

And

**TRISHAWNA PEARSON**
6104 Chandler Street
Cincinnati, OH 45227

Plaintiffs,

v.

**SMYRNA READY MIX CONCRETE LLC,**
**D.B.A. SRM CONCRETE**
4505 Anchorage Road
Cincinnati, OH 45226

Defendant.

Case No.

**Judge**

---

**COMPLAINT WITH JURY DEMAND**

---

Now Come Plaintiffs Dallas Killion and Trishawna Pearson, and allege as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff, Dallas Killion, at all times relevant hereto, was an employee of Defendant SMYRNA READY MIX CONCRETE LLC, D.B.A. SRM CONCRETE. Plaintiff's job included significant work in Ohio and was controlled by SRM Concrete.

2. Plaintiff, Trishawna Pearson, at all times relevant hereto, was an employee of Defendant SMYRNA READY MIX CONCRETE LLC, D.B.A. SRM CONCRETE. Plaintiff's job included significant work in Ohio, and was controlled by SRM Concrete.

3. At all times relevant herein, Defendant SMYRNA READY MIX CONCRETE LLC, D.B.A. SRM CONCRETE (hereinafter referred to as "Defendant SRM Concrete") was an entity licensed to do business and doing business in the state of Ohio with a principal place of business located at 4505 Anchorage Road, Cincinnati, OH 45226.

4. At all times relevant hereto, Defendant SRM Concrete was an employer with over 15 employees, and an employer as defined by Title VII, ADA, FMLA and Ohio Rev. Code §4112.01.

5. On or about August 16, 2024, Plaintiff Killion was terminated from employment with SRM Concrete.

6. Plaintiff Killion timely filed Charges of Discrimination with the Equal Employment Opportunity Commission (Charge No. 473-2025-00614) and Ohio Civil Rights Commission (Charge Number (DAYB6(023742)04042026)). The Charge of Discrimination alleged Discrimination based on Disability, Age, Sex, Race and Retaliation.

7. On 2/20/2026, the EEOC issued a Notice of Right to Sue Letter. A true and correct copy is attached hereto as Exhibit 1.

8. On 4/09/2026, Plaintiff Killion requested that the OCRC issue a Notice of Right to Sue letter.

9. On or about April 19, 2024, Plaintiff Pearson was terminated from her employment with SRM Concrete.

10. Plaintiff Pearson timely filed Charges of Discrimination with the Equal Employment Opportunity Commission (Charge No. 22A-2025-02143), and the Ohio Civil Rights Commission (Charge No. DAYB6(009967)10032024). The Charge of Discrimination alleged Discrimination based on Disability, Sex and Retaliation.

11. On January 28, 2026, and received February 3, 2026, the EEOC issued a Notice of Right To Sue Letter to Plaintiff Pearson. A true and correct copy is attached hereto as Exhibit 2.

**12.** On April 24, 2025, the OCRC issued a Notice of Right to Sue letter to Plaintiff. A copy of said NORTS letter is attached hereto and incorporated herein as Exhibit 3.

**FACTS REGARDING PLAINTIFF DALLAS KILLION**

13. Plaintiff hereby restates all prior statements and incorporates them herein as if fully restated.

14. Mr. Killion worked for SRM Concrete for more than two years and carried out his job duties to the same standard as his co-workers.

15. On August 16, 2024, Mr. Killion when the work environment at SRM Concrete became so hostile and toxic that he could no longer tolerate it.

16. The work environment at SRM Concrete was hostile and toxic because of discriminatory practices and abusive conduct of management, specifically Pete Miller. Mr. Miller's conduct included racial, disability based and sexual discrimination, epitaphs, and harassment.

17. In January of 2023, Mr. Killion underwent low back surgery and was authorized to go to work following that surgery for about 2 to 3 months. Approximately thirteen (13) days after his surgery, Supervisor Mr. Miller and general manager Mr. Griffith told him that if he did not return to work immediately, he would be fired. Out of fear of being retaliated upon for having a disability and losing his job, Mr. Killion returned to work.

18. When Mr. Killion returned to work he had a disability and requested reasonable accommodations in the form of light duty.

19. In March 2023, Supervisor Miller told him that if he did not return to full duty work, performing all regular work duties as a cement truck driver, he would be fired. Some of the duties were outside of the lifting, pushing and pulling accommodations requested by Plaintiff Killion.

20. In March of 2023, Mr. Killion was working on a job in Ohio when the truck got stuck in mud. Supervisor Pete Miller refused to send Plaintiff Killion help to get the truck out of the mud,

knowing that Plaintiff needed assistance because of his disability, and denying the same help that he gave to co-workers without a disability when their truck was stuck.

21. Plaintiff Killion was injured as a result of the Defendant SRM Concrete's refusal to accommodate him and discriminatory refusal to send help to get the truck out of the mud.

22. Plaintiff Killion reported the new injury and resulting disability to the company. Defendant SRM Concrete sent him to St. Elizabeth Occupational Health and underwent an examination and diagnostic testing. Mr. Killion sought follow-up treatment with his physician who recommended surgery.

23. Plaintiff Killion advised Defendant SRM Concrete of the disability and need for surgery.

24. Immediately thereafter, Defendant SRM Concrete, by and through supervisor Miller and General Manager Griffith told Plaintiff Killion that he would be fired if he underwent surgery. Defendant continued to refuse reasonable accommodation and refuse protected leave such as FMLA or extended leave under the ADA and/or Ohio Revised Code Title 41 and/or Kentucky Revised code.

25. Plaintiff Killion was subjected to ongoing racial discrimination by his manager, Pete Miller. Mr. Miller regularly made racist comments about African Americans, in the presence of Mr. Killion. Mr. Miller made racist comments to Mr. Killion about his own grandchildren, who are multiracial, saying that "White people should not breed with Ni… because it would ruin the children."

26. In or around June of 2024, Mr. Killion was verbally and physically threatened and chest bumped by Mr. Miller at work. This occurred when Mr. Killion advised Mr. Miller that he couldn't deliver an order of cement meant for a curb because Miller had refused to have the truck "chiseled." This made the truck inefficient at mixing and churning the cement based on its necessary

consistency. Mr. Miller responded that he was an idiot, screamed at him, got in his face, pointing and chest bumping Killion.

27. Mr. Killion reported Miller's threats to the general manager, Mr. Griffith. Killion wrote an incident report, gave it to Mr. Griffith, expecting that it would be forwarded for investigation to HR in corporate, as was the policy at the company. Mr. Griffith took no action to curb Mr. Miller's conduct.

28. Mr. Killion reported discriminatory conduct of both Mr. Miller and Mr. Griffith to Jeff Hollingshead, the Chief Executive Officer and Zac Gallagher, Regional Manager. Both Mr. Hollingshead and Mr. Gallagher told Mr. Killion that Mr. Miller's conduct was not a big deal and no action to correct the discriminatory and harassing conduct would be taken.

29. After Plaintiff Killion made his reports of discrimination, the harassment and discrimination became more frequent and more severe. Upon information and belief, Plaintiff Killion alleges retaliation by the Employer for his protected activity.

30. On or about August 16, 2024, Mr. Killion was constructively discharged from his employment with Defendant SRM Concrete, after having endured ongoing illegal discrimination by management, including racial discrimination, harassment, and discrimination based upon a medical disability.

## FACTS REGARDING TRISHAWNA PEARSON

31. Plaintiff hereby restates all prior statements and incorporates them herein as if fully restated.

32. Plaintiff Trishawna Pearson worked for Defendant SRM Concrete for about a year.

33. At all times relevant hereto, Plaintiff Pearson was an African American female with a disability.

34. On or about April 19, 2024, Plaintiff Pearson was terminated from employment with Defendant SRM Concrete for de minimis and pretextual reasons but were actually based discrimination based on sex and disability.

35. Ms. Pearson was provided minimal training, and yet carried out her job duties to the same standard as her male and non-disabled co-workers.

36. Ms. Pearson was ultimately fired while her male co-workers were neither fired nor disciplined.

37. Defendant SRM Concrete, by and through Supervisor / Managers Pete Miller, harassed and discriminated against Ms. Pearson. The harassment and discrimination were severe and pervasive.

38. In or around February of 2024, supervisor Miller demeaned and humiliated Plaintiff Pearson when she reported poor performance by a male co-worker. The male co-worker misdirected the conveyor belt while loading cement into his truck, causing it to spill out over the truck and onto the ground instead of into the truck. Plaintiff Pearson went up to the office to report the loss of cement and problem that arose so that Supervisor Miller could correct the problem.

39. Defendant SRM Concrete, via Supervisor Miller, did not take Plaintiff seriously, and said to her in a demeaning and threatening manner, "Do you even know what a conveyor is?"

40. Plaintiff Pearson showed Supervisor Miller photos of the cement spill she had taken on her phone. Defendant SRM Concrete, by and through Supervisor Miller, violently grabbed the phone from Plaintiff's hand and threw it on the table. He then yelled at her, demeaned her, humiliated her and told her to clock out and leave work.

41. Defendant SRM Concrete wrote Plaintiff Pearson up for insubordination and did nothing to take prompt remedial action to correct the discriminatory conduct of Miller.

42. Comparative male workers were not written up for the concrete spill.

43. Comparative employee Tony Wells was not disciplined or sent home for insubordination after having a verbal dispute with Supervisor Miller.

44. Plaintiff has a disability which is documented on her CDL and in her personnel records held by SRM Concrete.

45. In or around March of 2024, Ms. Pearson was at a job site (Adleta) and was feeling very lightheaded. She asked the contractor at Adleta if she could go get a drink because she felt dizzy, and he told her that was fine. Ms. Pearson then continued working without incident.

46. Defendant SRM Concrete then called her into the office about four days later. Defendant told Plaintiff that the contractor, Adleta, did not want her back on the job. This was not accurate as Plaintiff was sent back to Adleta about a week later.

47. In or around April 2024, Ms. Pearson was on a job for Day Precision Wall in Mariemont, Ohio. There was a break in pouring the concrete at the request of the foreman to allow the men to catch up in their work before additional concrete was poured. Ms. Pearson, having dire need to relieve herself, asked the foreman if she might use the bathroom. The foreman agreed. She used the portable toilet. This break did not interrupt the workflow or effect the job.

48. Defendant SRM Concrete questioned Plaintiff about the toilet break.

49. Defendant SRM Concrete did not question male comparative employees about their toilet breaks.

50. On April 19, 2024, Mr. Williams called Ms. Pearson into the office after she worked a half day and terminated her, stating the above incidents were the reason for her termination.

51. Defendant SRM Concrete violated their own company-wide policy addressing any employees feeling dizzy, tired or sick, and that the employees are to drink fluids when they terminated Plaintiff for drinking water.

52. Defendant SRM Concrete required Plaintiff to stay in her truck at all times, unless it was empty of cement, even in violation of the toilet and illness policy for hydration. SRM Concrete was aware and permitted male employees to relieve themselves while in the truck using a bottle or can. Comparative male employees were not disciplined for this practice. Plaintiff is not Male and is not able to relieve herself while sitting in the truck as the men do.

53. OSHA's sanitation regulation in 29 C.F.R. 1910.1419(C)(1)(i) states that "[e]xcept as otherwise indicated in this paragraph * * *, toilet facilities, in toilet rooms separate for each sex shall be provided in all places of employment in accordance with Table J-1 of this section * * *." According to a April 6, 1998, Director's memorandum to the OSHA Regional Administrators, this OSHA standard mandates that "employers allow employees prompt access to bathroom facilities," and also that "restrictions on access must be reasonable, and may not cause extended delays." (4/6/98 Memorandum of Director John B. Miles, Jr. to OSHA Regional Administrators and State Designees.)

54. Ms. Pearson's bathroom breaks did not unreasonably interfere with her job production and her termination based upon those breaks wrongfully violated the public policy embodied in OSHA's restroom standard.

55. Similarly situated employees in a non-protected class were treated better than Plaintiff Pearson.

56. As a direct and proximate result of Defendant SRM Concrete's wrongful termination of Plaintiffs Killion and Pearson, the Plaintiffs suffered economic and noneconomic damages and are entitled to punitive and non-pecuniary damages and attorney's fees and costs.

## FIRST CAUSE OF ACTION

## DISCRIMINATION BASED ON DISABILITY
## [ADA AND OHIO REV. CODE 4112 ET SEQ.]

57. Plaintiffs reallege all prior allegations and incorporates them herein as if restated.

58. At all times relevant hereto, Plaintiffs were cement mixer truck drivers and were qualified to perform their job at Defendant SRM Concrete.

59. At all times relevant hereto, Plaintiffs had a disability which affects each of their activities of daily living.

60. At all times relevant hereto, Defendants were aware of Plaintiffs' disabilities.

61. Plaintiffs were perceived as having a disability, respectively.

62. Plaintiffs advised and placed Defendants on notice of their disability and need for accommodation including light work, assistance getting the truck out of the mud, water and toilet breaks.

63. On or about April 19, 2024, Defendant terminated Plaintiff Pearson from employment because of her disability and/or perceived disability.

64. On or about August 16, 2024, Defendant terminated Plaintiff Killion from employment because of his disability and/or perceived disability.

65. As a direct and proximate result of violation of the Americans with Disabilities Act (ADA) and ORC 4112 et seq., Plaintiff Killion has lost his employment, lost wages, lost benefits, and continues to suffer economic and non-economic damages as described herein and to be proven at trial.

66. As a direct and proximate result of violation of the ADA and ORC 4112 et seq., Plaintiff Pearson has lost her employment, lost wages, lost benefits, and continues to suffer economic and non-economic damages as described herein and to be proven at trial.

## SECOND CAUSE OF ACTION

## DISCRIMINATION BASED ON AGE
## [ADEA and OHIO REV. CODE 4112 ET SEQ.]

67. Plaintiffs realleges all prior allegations and incorporates them herein as if restated.

68. At all times relevant hereto, Plaintiff Killion was over the age of 40 years.

69. Defendant took adverse employment actions against him, up to and including disciplinary actions, physical and verbal harassment which was severe and pervasive, and termination.

70. Defendant treated other employees who are significantly younger than Plaintiff better than Plaintiff.

71. Defendant took adverse employment actions against Plaintiff because of his age.

72. As a direct and proximate result of violation of the Age Discrimination in Employment Act (ADEA) and ORC 4112 et seq., Plaintiff Killion has lost his employment, lost wages, lost benefits, and continues to suffer economic and non-economic damages as described herein and to be proven at trial.

## THIRD CAUSE OF ACTION

## DISCRIMINATION BASED ON SEX
## [TITLE VII AND OHIO REV. CODE 4112 ET SEQ.]

73. Plaintiffs realleges all prior allegations and incorporates them herein as if restated.

74. Plaintiffs are each a member of a protected class. Pearson is female. Killion is male.

75. Plaintiffs were subjected to adverse employment actions, up to and including termination based on their respective sex.

76. Defendants treated Plaintiff Pearson worse than her comparative employees of Plaintiff Pearson who were not female up to and including termination.

77. Defendants treated Plaintiff Killion worse than his comparative employees of Plaintiff Pearson who were not male up to and including termination.

78. Defendants subjected Plaintiffs to adverse employment action, including termination, at least in part based on their sex.

79. As a direct and proximate result of violation of Title VII and ORC 4112 et seq., Plaintiffs, and each of them, lost their employment, lost wages, lost benefits, and continues to suffer economic and non-economic damages as described herein and to be proven at trial.

## FOURTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF TITLE VII, ADA, AND OHIO REV. CODE 4112 ET SEQ.

80. Plaintiffs reallege all prior allegations and incorporate them herein as if restated.

81. Plaintiffs are members of a protected class in that they each notified Defendant of their disability, requested accommodation based on their disability, and objected to the adverse actions against them based on illegal basis (including disability, sex, and age).

82. Plaintiffs are members of a protected class including objecting and reporting discrimination by Defendant managers and supervisors to Defendant SRM Concrete.

83. Defendant took adverse employment actions against Plaintiffs, up to and including including termination, based on Plaintiffs' complaints of discrimination and request for reasonable accommodation and/or time off to recover from the exacerbation of their respective disabilities.

84. Defendants treated other employees who did not request accommodations, leave or complain about discrimination better than Plaintiffs.

85. As a direct and proximate result of violation of Title VII, ADA and ORC 4112 et seq., Plaintiffs have lost their employment, lost wages, lost benefits, and continue to suffer economic and non-economic damages as described herein and to be proven at trial.

## PRAYER

**WHEREFORE, Plaintiffs Dallas Killion and Trishawna Pearson** pray for an award of against Defendants, and each of them as follows:

1. Reinstatement;
2. Lost Wages;
3. Lost future wages;
4. Lost benefits;
5. Pain and suffering;
6. Emotional distress;
7. Attorney's Fees and Costs; and
8. All other damages as is equitable and just.

Respectfully submitted,

**THE SAMMARCO LAW FIRM LLC**

/s/ Alissa J. Sammarco

Alissa J. Sammarco (0077563)
Attorney for Plaintiffs
810 Sycamore ST, 5th FL
Cincinnati OH 45202
Telephone 513-763-7700
Fax 513-763-7704
AJS@SammarcoLegal.com

## JURY DEMAND

Plaintiffs hereby demand trial by jury.

/s/ Alissa J. Sammarco

Alissa J. Sammarco (0077563)
Attorney for Plaintiffs